ORIGINAL

Anthony Contreras
CONTRERAS & CAMPA, LLP
633 West 5th Ave., Suite 2600
Los Angeles, CA 90017
Tel.: (213) 480-8565

Benjamin D. Martin
1188 Bishop St. Suite 1810
Honolulu, HI 96813

Attorneys for Defendant ROMAN CALDERON

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAR 15 2007

at ____ o'clock and ____ min. ____ M
SUE BEITIA, CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>Plaintiff, )<br><br>vs. )<br><br>ROMAN CALDERON (02), )<br><br>Defendant. )<br>_____ ) | CR. No. 03-00495-02 DAE<br><br>DEFENDANT ROMAN CALDERON'S REPLY BRIEF, OR IN THE ALTERNATIVE CONSOLIDATED MOTION, TO DISMISS FOR LACK OF TIMELY PROSECUTION; AND SUPPORTING AFFIDAVITS OF A. CONTRERAS AND D. CAMPA<br><br>MOTION HEARING:<br><br>Date:  March 21, 2007<br>Time:  9:00 a.m.<br>Judge: Hon., David Allan Ezra |

## PREFACE

Roman Calderon was indicted by secret indictment on October 8th, 2003, and shortly thereafter extradited to Hawaii from his Arizona home. In light of the undisputed fact that defendant Roman Calderon's Motion to Dismiss for Lack of Timely Prosecution, filed 30 August 2005 and continued multiple times at the behest of the prosecution, has now, almost two years (2) later, never been, and still remains *unopposed*, the defense asks this Court to dismiss the information against Mr. Calderon. The utter lack of any opposition to Calderon's motion implies and infers much. And although Calderon's counsel need not file any reply to an unopposed motion, counsel sincerely believes that the prosecution's silence and utter lack of any opposition may hinder this Court from considering all relevant facts bearing upon this motion, and may ultimately deprive the Court of a meaningful application of the United States Supreme Court's four (4) factor analysis essential to resolve a Sixth Amendment challenge asserting a Speedy Trial violation. Thus, Calderon, through his attorneys of record herein, respectfully submits this reply brief (or in the alternative, consolidated motion) to supplement facts in support of his unopposed motion to dismiss for lack of timely prosecution.

## STATEMENT OF THE CASE

On October 8th 2003, defendant Roman Calderon (hereinafter referred to as Calderon) was indicted by a Grand Jury for allegedly conspiring to knowingly and intentionally possess with intent to distribute methamphetamine; knowingly and intentionally possess with intent to distribute methamphetamine; use of a communication facility, to wit, a telephone; and conspiracy to knowingly and intentionally commit money laundering; counts 1, 2, 6, and 9 respectively.

On October 9th 2003, the United States District Court for the District of Hawaii issued an arrest warrant for Calderon's arrest, and on October 16th

2003, a search warrant for his Arizona residence also issued.  On October 17th 2003, his residence was searched (although nothing of importance was discovered or found), and he was taken into custody without incident.  His arrest was followed by his detention in Arizona.

Thereafter, pursuant to an unopposed extradition order, issued by the United States District Court for the District of Hawaii, Calderon was extradited to Hawaii.  He was arraigned in Hawaii sometime in November of 2003.  It was at this time Calderon's counsel, from Los Angeles, California, first appeared on his behalf (Contreras & Campa, LLP, Anthony Contreras, appearing, *pro hac vice*).

Calderon's initial pretrial conference was held in March 2004, and Anthony Contreras again appeared in person on that date.  On that date the Court vacated a previously scheduled April 20th trial date, and continued the trial date to August 3rd, 2004.  At that pretrial conference, or shortly thereafter, the prosecution provided defense counsel with a proposed plea agreement (hereinafter, *Initial Plea Proposal*).  The parties agreed to participate in debriefing, and work towards a speedy resolution of the matter.

Without prior notice, and unbeknown to either Calderon or his attorneys of record, in July 2004, the Court vacated its prior order and reset the matter previously scheduled for trial on August 3rd, 2004, to October 19th, 2004.  This was the last Calderon was advised as to the status of the allegations pending against him until sometime in June 2005.

Another order was made by the Court setting a pretrial conference for hearing on September 20th, 2004.  That date came and passed, without Calderon ever being informed of this new hearing, or being brought before the Court.  During the entire time in question, Calderon remained, and still remains, incarcerated.

Only a few months shy of two (2) years having passed, the prosecution presented to Calderon's defense counsel proposed stipulations waiving time for the above noted Court hearings and proceedings, all of which had already long since passed.  Calderon's counsel declined to sign the prosecution's proposed stipulations seeking orders waiving time on Calderon's behalf because neither Calderon, Contreras & Campa, LLP, or local designated counsel, Benjamin Martin, were ever provided with prior notice of said court hearings and proceedings.

Contreras and Campa, LLP (hereinafter referred to as "Contreras and Campa"), requested local designated counsel, Benjamin Martin, to appear on their behalf at the July 2005 court hearing.  Contreras and Campa simply wished to set a date certain,  that would afford them reasonable time to appear in person before the Court in Hawaii.  They wished to voice their grievances vis-a-vis the scheduling of Court proceedings and trial dates without their knowledge, and without proper prior notice.

On August 18th, 2005, Contreras and Campa communicated to the prosecutor that Calderon wished no further delay in the proceedings.  As of that date, there had been no further agreed upon continuances of the matter by Calderon or his attorney.  Neither were there any further findings by the Court as to Calderon, which excluded the intervening time from October 28, 2004, to August of 2005, from the computations required by the *Speedy Trial Act*, Title 18, *United States Code*, § 3161.  Finally, there were no additional orders and/or findings as to Calderon, that the ends of justice outweighed the best interest of the public and the defendants in a speedy trial due to the necessity of reasonable time for preparation and taking into account due diligence in accordance with 18 U.S.C. § 3161 (h)(8)(B)(iv).

On August 31st, 2005 Contreras & Campa (through designated local counsel) filed Calderon's *First Motion to Dismiss* based on the seventy day rule

of the Speedy Trial Act, and the motion was set for hearing on September 22nd, 2005 (as a courtesy, a true and correct conformed copy of Calderon's *First Motion to Dismiss* is incorporated by reference and attached hereto as Exhibit "A").

On September 07th, 2005, Contreras & Campa received their first correspondence from the prosecutor. The first such correspondence from the prosecution since the case's inception, which purported to propose a plea agreement between the parties. Perhaps the only written correspondence from the prosecution received by Contreras & Campa, other than those seeking to continue the proceedings. And this, only after a great deal of prompting by defense counsel to reduce to writing the substantial efforts by the defense during debriefing.

The correspondence was by way of facsimile and consisted of a boilerplate plea proposal (hereinafter, *Duplicate Facsimile Proposal*). This, over a full year and a half since the parties had been working on a resolution of the matter, and over a full year and half since Anthony Contreras received the first such proposal at, or shortly after the initial pretrial conference held in March 2004.

Worse yet, the prosecution's *Duplicate Facsimile Proposal* was an exact copy of a draft proposal first presented to Calderon's counsel in March 2004, the *Initial Plea Proposal*. It was the same form proposal with nothing more, and reflected none of the work done in earnest by the defense shortly after Calderon's initial pretrial conference (*i.e.*, Calderon's continuing proffer to the prosecution and the plea negotiations between counsel).

On September 16, 2005, *at the request of the prosecution*, the hearing on Calderon's motion to dismiss was continued by stipulation, and reset for hearing on November 28th, 2005.

After repeated attempts to elicit some response from the prosecutor on the many unresolved issues vis-a-vis the *Duplicate Facsimile Proposal*, and receiving no response whatsoever, Contreras & Campa sent the prosecutor a written counter proposal on November 14th, 2005 (hereinafter *Counterproposal*). Counsel by then gave up any hope of regular phone communication with the prosecutor. The *Counterproposal* included some previously omitted provisions and other specific proposed revisions. The *Counterproposal* also called on the prosecutor to review specific portions of the *Initial Plea Proposal*.

On November 23rd, 2005, again days prior to the hearing, and again *at the request of the prosecution*, Calderon's *First Motion to Dismiss* was continued to December 28th , 2005.

At all relevant times herein, all continuances on Calderon's *First Motion to Dismiss* are done at the behest of, and by the prosecution. Calderon after all, had grown increasingly alarmed and perplexed by the inordinate delays, the relative ease with which the delays were obtained, and the manner by which the case was being delayed without his knowledge.

The hearing set for December 28th 2005, apparently was yet again continued until February 21st, 2006. The prosecutor again, had set this date without the knowledge of Contreras and Campa. Contreras and Campa discovered this from their designated local counsel (Mr. Benjamin Martin), only after dispatching him to determine if the December date was indeed still on calendar.

All the while during this now six to eight month period since the filing of defendant's *First Motion to Dismiss,* the prosecution has attempted to surreptitiously obtain defense counsel's signature on additional proposed stipulations to postpone trial on the matter. He has done so on at least three or four occasions (see Decl. of attorney Campa submitted in support of motion), despite having been put on notice that Calderon wished no further delay in the

5

proceedings, and despite being in receipt of defendant's *First Motion to Dismiss* which complained of the delays. All such requests have been steadfastly refused by Contreras & Campa. All proposed stipulations to continue were sent *post hoc*, and were predated for dates that already had come and gone.

Calderon does not wish any further delays. Contreras & Campa had thought that Calderon's *First Motion to Dismiss* would have made it evidently clear to the prosecution that Calderon wished no further delay. Respectfully, Calderon insists on his right to a speedy trial, and the prosecution was put on notice of his position well before the filing of Calderon's motion to dismiss.

With the exception of continuing the motion hearing date on his *First Motion to Dismiss* (at the request of the prosecution), Mr. Calderon does not wish any further delay of these proceedings.

Contreras & Campa sent no less than three (3) written requests to the prosecution seeking a response to the defendant's *Counterproposal*, in the two or three months leading up to the July 2006 trial date. Contreras and Campa ultimately sought a simple return phone call from the prosecutor, to their repeated efforts to communicate with him. Any response was sought from the prosecutor, as counsel knew a trial date was fast approaching. All requests fell on deaf ears.

Contreras & Campa received no such response or any correspondence from the prosecution, since the *Duplicate Facsimile Proposal* of September 07th, 2005 (an exact copy of the *Initial Plea Proposal* of 2004). That is, for almost nine months the prosecution simply ignored repeated good faith efforts by defense counsel to amicably attempt a speedy resolution of the matter. Efforts in both written form, and by way of telephonic messages. This demonstrated to counsel a steadfast refusal by the prosecution to even come to the table.

At this point, Contreras and Campa arranged to appear in person at the appointed time and place for jury trial (see Decl. of attorney Contreras submitted in support of motion which in more detail informs us of the events discussed herein). On July 26, 2006, Mr. Contreras appeared at the assigned courtroom and designated time to announce ready for trial, and voice his grievances to the Court about the unexpected delays.

Mr. Campa had also arranged to appear on that date, however his last minute travel arrangements did not allow him to depart from Los Angeles. Instead, he was forced to fly to the Las Vegas airport, to secure a flight for the same day to Hawaii. He arrived sometime around noon.

Mr. Contreras meanwhile, reviewed the Court's electronic database pertaining to the matter, located on the third floor of the Court Clerk's office. Much to his surprise, he discovered that the date set for trial had been continued yet again (and without his knowledge).

Mr. Campa was then advised of this upon his arrival, and also remained dumbfounded as to this most recent development. So much so, that Mr. Contreras had to return with him to the courthouse, and show him on the database at the clerk's office, the related entry on the docket.

Contreras and Campa, with what resources were available at the time, promptly moved Ex-parte to air their grievances to the Court, and demand a speedy trial. They were unable to contact the prosecutor.

After filing the Ex-parte motion, and several unreturned phone calls to the prosecutor, Contreras and Campa received word from Los Angeles that the prosecutor had called their office. Finally speaking by phone with the prosecutor, they were invited to his office to discuss the matter.

After a brief discussion with the prosecutor, Contreras and Campa, caught completely by surprise and unprepared for this latest development in the case, decided to leave Hawaii for the moment. This, after meeting with the prosecutor

7

who admitted not sending them any notice regarding the new dates for Calderon.

New dates were yet again scheduled on the matter, without affording Calderon or his attorneys an opportunity to be heard, much less an opportunity to confer with their respective calendars. These dates came and went without any notice ever sent to Contreras and Campa, and without ever having informed them of the new dates.

Thereafter, the Court scheduled an OSC against Contreras and Campa for their failure to appear at an October 30, 2006 Final Pretrial Conference. The OSC date apparently had been set at the same time the Court had scheduled a new trial date. All dates being scheduled without providing an opportunity for Calderon or his attorney to be heard, nor providing counsel an opportunity to confer with their respective calendars. And all are done so *without ever providing any notice to Contreras and Campa, or their designated local counsel*. Neither Contreras and Campa, nor their local counsel, were present when the OSC date was set by the Court. The OSC against Contreras and Campa was scheduled for November 6th, 2006. Mr. Campa appeared telephonically, and after hearing from both parties, the court set the matter for further proceedings on November 16th, 2006. On November 13th, 2006, the court vacated and advanced the hearing to November 14th, 2006.

Further proceedings were held on that date. Mr. Contreras appeared telephonically, and the prosecutor (apparently unavailable) had another representative of his office appear for him. After hearing from both sides on the matter, the Court found that no notice had in fact been provided to defense counsel (see decl. of attorney Contreras submitted in support of motion). The prosecutor essentially admitted that no notice had in fact been sent to Contreras and Campa or their local designated counsel of record, and the OSC was discharged in its entirety against Contreras & Campa. Perhaps most noteworthy

8

is the fact that the Court made *no findings or order excluding time from the computations required by the Speedy Trial Act*. All previously scheduled dates were thereafter vacated by the Court.

The prosecution has essentially done nothing to advance a resolution of this matter as demonstrated by the prosecution's utter silence to Contreras and Campa's many requests through the time period in question. Once again, the only correspondence received by Contreras and Campa (the *Duplicate Facsimile Proposal* of September 7th, 2005), was an exact copy of the prosecution's *Initial Plea Proposal*. A proposal provided to defense counsel in March 2004.

Counsel for Calderon can interpret the prosecution's conduct in no other way than a steadfast attempt to stonewall the proceedings in this action, while simultaneously continuing to deny Calderon his right to Due Process and a Speedy Trial. Based on the aforementioned facts, the additional facts stated below, and the statutory and legal authorities cited in support thereof, counsel respectfully ask this Court to dismiss the accusations pending against Mr. Calderon.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

A defendant's right under the Speedy Trial Clause of the Sixth Amendment are triggered by "either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge." (*United States v. Marion*, 404 U.S. 307, 320; 92 S. Ct. 455 (1971).) The seminal United States Supreme Court case of *Barker v. Wingo* establishes the framework for a speedy trial analysis by enunciating the various factors for courts to consider.

(*Barker v. Wingo,* 407 U.S. 514, 530-33; 92 S. Ct. 2182 (1972).) Moreover, the

Court cautions us of the weighty responsibility that such an analysis carries:

> [B]ecause we are dealing with a fundamental right of the accused,
> this process must be carried out with full recognition that the
> accused's interest in a speedy trial is specifically affirmed in the
> Constitution.

(*Barker,* 407 U.S. 514 at 531-33.)

In the instant case, the prosecution has denied Calderon his

constitutionally protected right to due process and a speedy trial, by engaging in

a campaign to protract litigation, while attempting to gain advantage over the

defendant. The prosecution has done so without just cause. But more

importantly, the prosecution, in underhanded manner, has sought to remedy the

problem by submitting stipulations to Calderon's counsel which purported to

waive time for court hearings after the dates for those court hearings had

already passed. This alone, in defense counsel's humble opinion, warrants

scrutiny from the court, and outright dismissal of the information pursuant to

Rule 48 of the Federal Rules of Criminal Procedure. Of course in part, this

conduct by the prosecution prompted the filing of Calderon's *First Motion to*

*Dismiss* in August 2005.

At that point, the prosecution mislead the defense to believe that resolution

of the matter was imminent, when in reality they made no significant effort

whatsoever to resolve the matter. This despite numerous correspondences and

phone messages from defense counsel seeking a response from the

prosecution. All of which were met with absolute silence (see Decl. of attorney Campa submitted in support of motion.) No response to the many written and oral requests from defense counsel to the prosecution. Based on these facts, Calderon respectfully requests the Court to enter an order dismissing the accusations against him.

## II.   ARGUMENT

In *Barker,* United States Supreme Court, enunciated the four (4) factors for courts to consider in determining whether a defendant's the Sixth Amendment right to a Speedy Trial has been violated:

1) the *length* of the delay,
2) the *reason* for the delay,
3) the *defendant's assertion* of his right; and
4) *prejudice* to the defendant.

(*Barker*, 407 U.S. 514 at 530-33.) In doing so, the court found no violation of Barker's rights.

The majority of the delay in *Barker* was attributable to the State's attempted separate prosecution of a co-defendant. Additionally, a review of the record revealed that Barker's attorney had conceded that Barker did not want to go to trial. The record also indicated that the prosecution had failed several times to convict Barker's co-defendant. Moreover, based on the record, the Court found that the Barker defense had been gambling on an acquittal in Barker's accomplice's case. The Barker defense thought that an acquittal in the accomplice's case would result in the same for Barker.

11

After weighing the relevant four (4) factors identified above, the Court held that under those circumstances Barker was not deprived of his due process right to a speedy trial. It should be noted that Barker was incarcerated for only ten (10) months prior to trial, but otherwise was free on bail during the time in question. Calderon on the other hand, has remained in custody, never really having been brought before the court on the many aforementioned court hearings.

The Court further held that Barker's right to a speedy trial was not violated, because it was clear from the record that Barker did not want a speedy trial. And finally, the record demonstrated virtually no prejudice to the defense. In sum, Barker was not in custody for most of the time in question, and could point to no specific prejudice.

## A.  Delay

The case at bar vastly differs in several important respects from the *Barker* case. Calderon *has been* in custody the entire time of the delay in question. He has been in custody since the day of his arrest, October 17th, 2003, a period approaching *four* (4) years. A lengthy delay that far exceeds the generally accepted period otherwise described as "presumptively prejudicial." This is the first factor that the *Barker* Court turns our attention to in a speedy trial analysis, the *length* of delay.

In contrast to *Barker* then, Calderon *has been in custody* from the outset of these proceedings, again a period approaching *four (4) years*. Incarcerated on the Island far away from his Arizona home and family. Calderon has not even been so much as brought before the Court on the allegations pending against him since his arraignment in November 2003. In that respect, Calderon's situation more closely resembles -*incommunicado*- border detention cases, than the Barker case. There of course, our courts have perhaps condoned vastly diminished Due Process rights under a Strict Scrutiny analysis for the important sovereign purpose of protecting our borders. Not so for a Due Process/Speedy Trial analysis applied to those similarly situated as Calderon in the instant case.

So, whereas we can derive from the record that Barker was brought before the court on a number of occasions, and his counsel appeared at court hearings on his behalf when the matter was continued; no such opportunities existed for Calderon. Whereas Barker remained informed, and appeared before the court more or less throughout the proceedings, Calderon has remained in the dark. Instead we have a paper record of unsigned stipulated continuances that purport to continue trial dates and conferences for dates long since passed. None of which have been consented to, agreed upon, or otherwise waived by Calderon. So this case presents a qualitatively different type of delay than that found in *Barker*.

B.  **Invited Delay**

We can be sure that the Supreme Court's holding in *Barker* leaned heavily on the fact that Barker's attorney conceded he did not want to go to trial.  Quite the opposite is true in the instant matter.

In February 2005, the prosecution was put on notice that defense counsel would not consent to, nor was willing to sign the several stipulations purporting to continue court hearings that had already since passed.  Those intentions were made even clearer upon the filing of Calderon's *First Motion to Dismiss* in August 2005, whereby Calderon (through his attorney) moved to dismiss the indictment because of the unnecessary delay.  A delay that had occurred entirely outside of Calderon's presence (as he was locked away), and in large part without proper notice to Calderon or his attorney, much less his or his attorney's consent.  That motion was temporarily stayed by Calderon in a last ditch effort, at least on Contreras & Campa's part, to resolve the matter.

This approach led nowhere, and Contreras & Campa once again sought to assert Calderon's right to speedy process by refusing requests from the prosecution seeking further postponement of the proceedings.  At this point, Contreras & Campa again sought to preserve Calderon's speedy trial right by hastily preparing for, and appearing in Hawaii in July 2006, on the appointed time and place, to announce ready for trial in the trial court.  Befuddled at that time by the court's closure on the appointed time and place for trial, Anthony

Contreras discovered at the clerk's office the matter had been once again postponed without his knowledge.

At this time, Contreras & Campa, though away from their office, mustered what resources they could (with the aid of their local designated counsel[1]) and promptly moved Ex-parte for an order from the court to bring the matter to trial. Yet again to be put off by the prosecution, and persuaded to stay the Ex-parte based on representations by the prosecution to renew their previous attempts at resolving the matter.

Calderon's conduct in the instant matter clearly differs significantly from Barker's "invited delay" perceived by our Supreme Court in that case. At Calderon's behest, Contreras & Campa have at all critical stages of the proceedings attempted to preserve Calderon's right to speedy process.

Moreover, Calderon has never sought to protract litigation in this matter in the hopes of gaining some advantage. He is not gambling on any acquittal or other event to transpire that will dramatically alter any outcome in his case.

Aside from these important differences between the two cases, Calderon also asks that this Court look beyond the mere holding in the *Barker* case. The *Barker* Court of course held that the more than five year delay did not violate Barker's speedy trial rights. Nevertheless, the Court *did* find the delay to be too long in *Barker*.

---

1 Whose information at all times since the inception of the case was on file with the court.

> Perhaps some delay would have been permissible under ordinary
> circumstances, so that Manning could be utilized as a witness in
> Barker's trial, *but more than four years was too long a period*,
> particularly since a good part of that period was attributable to the
> Commonwealth's failure or inability to try Manning under
> circumstances that comported with due process.

*Barker,* 407 U.S. 514, at 534 (emphasis added).  Here, the United States

Supreme Court in *Barker* clearly instructs and informs us that the *four (4) year*

*delay was far too long*.  Especially in light of the prosecutor's failure to afford

*Barker's* co-defendant (Manning) due process in separate proceedings.  The

prosecution's delay in both Manning and Barker's proceedings were too long in

the Supreme Court's view.  However, the Court found that *Barker* consented to

and indeed in all likelihood invited the delay in his case, as the Court found that

he was gambling on an acquittal in the separate proceedings against his co-

defendant Manning.

Not so in the instant case.  The record in the instant matter demonstrates

that Calderon throughout the proceedings has attempted to assert his right to

speedy process.

## C.    The Delay Was Invited By The Prosecution

Calderon, neither through his attorney, nor in person, has ever given this

Court any reason to find he has invited any delay in this case.  Sometime in

February 2005, Calderon had expressed his concerns with the many

continuances being made without his knowledge.  It was at this point that

Contreras & Campa notified the prosecutor that they would not consent nor sign

the proposed stipulations purporting to continue court hearing dates that had long since come and gone. Calderon did not wish to permit any further prosecutorial delay. He felt the prosecution had not advanced in any meaningful fashion his attempts at negotiating some sort of resolution of the matter. This was the primary impetus that led to counsel's filing of Calderon's *First Motion to Dismiss* in August 2005.

Since then, his attorney has agreed to continue a hearing on the *First Motion to Dismiss* for the sole purposes of ascertaining if there efforts at some resolution may succeed. And since that time, counsel for Calderon has made every attempt to resolve the matter with the prosecutor. All in vain. Utterly abandoned by the prosecution once again. Counsel has essentially succeeded on communicating with the prosecutor only on those occasions when the prosecutor required counsel's signature on stipulated continuances for court hearings.

Counsel for Calderon has agreed to continue only the Hearing on Defendant's *First Motion to Dismiss.* And that at the behest of the prosecutor, after leading defense counsel to believe that resolution of the matter was imminent. Counsel believed that postponing the matter for those purposes perhaps would be in defendant's best interests, despite defendant's own reticence to continue to postpone the proceedings against him. Unlike the *Barker* case then, Calderon never invited any delay, nor was he ever gambling

17

on any saving event in the future.

Yet, after leading defense counsel to believe resolution of the matter was imminent, the prosecutor then embarked on another year, or so, delay in the case. All the while engaging in a campaign of ignoring defense counsel's repeated requests to respond to proposed modifications of the prosecutor's Initial Proposal (which was wholly inadequate given the circumstances of the case). All the while maintaining an eerie silence to those several inquiries by defense counsel. And all the while communicating only by last minute phone calls to defense counsel when absolutely necessary for the prosecutor to further postpone proceedings against Calderon.

At the same time (one can only assume), continuing to prepare the case against him, and in all likelihood hoping to gather more damaging evidence against Calderon on an otherwise questionable conspiracy charge. To be sure, the prosecution's evidence against Calderon will rely heavily on wire taps to connect him presumably to a scheme by many local Islanders to distribute methamphetamine on the Island. Phone calls, a visit or two to the Island, and essentially nothing more, presumably link Calderon to the local distributors. Local distributors that had been in operation long before Calderon ever came into the picture.[2]

Perhaps the prosecution has deliberately engaged in these delay tactics to solidify an otherwise dubious case against Calderon. Counsel believes that at

---

2   As conceded by the chief investigator early in the matter during de-briefing.

the least, the delay in Calderon's prosecution has afforded the prosecutor an inordinately lengthy opportunity to sort through the many wiretaps and surveillance of this presumably multilevel operation distributing drugs on the Island. All in an attempt to find sufficient evidence to make the connection to Calderon. A connection that perhaps can not be made.

In all likelihood, the prosecution has also sought to gain an advantage over Calderon by delaying the present matter while attempting to  obtain damaging testimony from the co-conspirators. Testimony that the prosecution would hope finally connects Calderon to the distribution ring. A connection the current state of the evidence does not support.

This matter involves multiple defendants, most all of whom are local residents, unlike Calderon. It is likely all parties have been vying for a position of advantage to the others similarly situated. Of course for the prosecution to engage in such conduct, and delay the case for those purposes impinges on the integrity of the U.S. Attorney's office. At the same time, it would be dishonest for us to assume the prosecution does not understand the advantage gained by throwing all in the pot, and then protracting their day in court, and ultimately their individual fates. Like standing by idly, while watching a pot boil over.

Their individual fates under our own harsh sentencing guidelines for these type of offenses *must* loom ominously over each. No doubt such a condition if left to stew sufficient time, is likely to lead to recriminations, and other irrational

acts of desperation.  Not truthful and accurate statements of the events.  A
condition that rather, lends itself to unreliable means of gathering information
against any of those involved.  In counsel's humble opinion, such a condition
inevitably leads to a garbled hodge podge of unreliable, inaccurate, and often
times simply false information from those whom such information is obtained, as
each face the allegations leveled against them by the state.[3]

Perhaps as in *Barker* then, the prosecution here hopes, or is gambling on
obtaining some damaging evidence from the other defendants in the matter.
Perhaps the prosecutor hopes that by delaying the instant case he can bring
additional pressure to bear on the co-defendants to offer incriminating evidence
against the only mainlander in the group.  Or perhaps the prosecution simply
hopes to avoid prosecuting the matter at trial altogether, and that given sufficient
time, Calderon will simply capitulate to the charges after a delay exceeding
three (3) years.

All of these scenarios in counsel's mind are real possibilities that only
scratch at the realm of possibilities available to the prosecution in persistently
seeking out delays in this matter against Calderon.  We of course can not know
without hearing from the prosecutor himself on the matter.  But to be sure, the
prosecutor's delays have afforded the State many such opportunities to shore

---

3  Counsel invites the court to consider  <u>Snitch Culture</u>, Jim Redden, Feral House Publishing distributed by
   Publisher's Group West c. 2000.  An excellent expose on just how our drug policies, and the manner in which
   we investigate and prosecute these cases through the use of secret indictments, confidential informants, and
   draconian penalties, is simply wrong, and has accomplished little.

up what appears to be an otherwise weak connection to the conspiracy charge leveled against Calderon.

### D.    **Reason for Delay - Silence**

Only the prosecutor can inform us on these critical issues that our Supreme Court instructs is one of the four factors to be weighed in the speedy trial analysis: the *reason* for the delay.  However, he has failed to do so. Calderon through his attorney, filed on 31 August 2005, his *First Motion to Dismiss.*  That motion was set for hearing in November of last year.  An opportunity for the prosecution to justify the delay in this matter to the Court, and argue against the request to dismiss by Calderon.

At that time, the prosecutor prevailed upon counsel for Calderon to continue the matter, with the promise of negotiating a resolution of the matter. However, since doing so, the prosecutor has nary a word for defense counsel except for those instances when he required to postpone the matter, yet again.

In, July 2006, almost another year since filing his *First Motion to Dismiss*, counsel for Mr. Calderon had yet to hear anything from the prosecutor with regards to the prosecution's *Initial Plea Proposal* submitted to defense counsel. That proposal was no more than a boilerplate form proposal provided by the prosecutor at the time of defendant's First Pretrial Conference way back in 2003. Before any work had been done on the matter.  A form proposal used by the prosecutor in all such cases, and unmodified for the purposes of any particular

case. This despite repeated efforts and many requests from defense counsel

detailed in attorney Campa's declaration submitted under oath (see Decl. of

attorney Campa in support of motion). In effect, the prosecution had done

nothing to advance a resolution of the matter as promised, since the date of that

First Pretrial Conference.

There, the prosecutor submitted to defense counsel its *Initial Plea*

*Proposal.* A proposal that was silent on the many issues counsel has detailed

for the prosecution in their many correspondences with the prosecutor. A

proposal that included no mention of the work done on the matter in those

several months following Mr. Calderon's arraignment and first pretrial

conference. And a proposal that was wholly inadequate at the time for any kind

of meaningful resolution of the matter. It was by the prosecutor's own admission

nothing more than a "boiler plate" form agreement for the parties to begin

negotiating.

More importantly though, the prosecutor at that point had a full year to

respond to defendant's *First Motion to Dismiss.* That is, the prosecutor has had

ample opportunity to inform this Court of the reasons it may have for the patent

delay in this case against Mr. Calderon. Our defendants' silence speaks in as

many ways according to our courts' precedence. Such silence by defendants in

these matters typically are read to constitute waivers and acquiescence by the

defense. Should not the prosecutor's silence on the matter be construed

against the interests of the state?  Should not  their gamble that co-conspirators

will resort to recriminations and stories that lay blame elsewhere, be treated in

the same way that defense counsel's gamble on an acquittal in *Barker* was

treated?

The United States Supreme Court ruled that Barker's gamble on the co-

conspirators acquittal prevented him from claiming a violation of his speedy trial.

Should not the prosecutor's gamble that one or the other co-conspirators will

incriminate another, thwart any effort by the state to rebuff a speedy trial

challenge by the defense in a *Barker* analysis?  After all the court said:

> Closely related to length of delay is the *reason* the government
> assigns to justify the delay. Here, too, different weights should be
> assigned to different reasons. A deliberate attempt to delay the trial
> in order to hamper the defense should be weighted heavily against
> the government.  A more neutral reason such as negligence or
> overcrowded courts should be weighted less heavily but
> nevertheless should be considered since the ultimate responsibility
> for such circumstances must rest with the government rather than
> with the defendant. Finally, a valid reason, such as a missing
> witness, should serve to justify appropriate delay.

(*Barker*, 407 U.S. 514, at 531, emphasis added.)

The prosecution has advanced no legitimate interest to explain this

inordinately lengthy delay in Calderon's prosecution.  This despite being given

the opportunity to do so by way of Calderon's *First Motion to Dismiss.*  (Ex. "A".)

The prosecution has steadfastly failed to respond to defense counsel, and has

maintained the same kind of silence that prompted defense counsel to file

Calderon's *First Motion to Dismiss.*  Still, no explanation from the prosecution

after almost two (2) years since the filing of said motion.

*Barker* further informs us:

> any inquiry into a speedy trial claim necessitates a functional analysis of the right in the *particular context* of the case . . .

(*Barker,* 407 U.S. 514, at 522.)  To that end, Calderon respectfully calls the Court's attention to the cold record on file herein.  The prosecution has continually sought to delay the proceedings against Calderon, and has done so with absolute disregard for  Calderon's Due Process rights.  The Court will find that Calderon has neither consented to, nor acquiesced in any of the many postponements and delays sought by the prosecution, with the exception of  the initial pretrial conferences, and the hearing on the defense motion to dismiss. All further continuances sought by the prosecution have been rejected by the defense, and in many instances court dates simply were unilaterally rescheduled without the defense counsel's presence or knowledge.

**E.    Ex-Parte Delay and/or Cover Up**

Additionally, those further continuances were obtained by the prosecution unilaterally, and either over defense counsel's objection, or lack of knowledge and/or presence.  After obtaining those unilateral continuances, the prosecution then attempted to mend these errors by asking defense counsel to backdate and sign proposed stipulations for said continuances.  The prosecution sent several proposed stipulations to defense counsel seeking to obtain signatures on backdated stipulations that purported to continue these unilaterally obtained

future trial dates.  Thus affording defense counsel no opportunity to discuss the matter previously with his client.  How could defense counsel possibly ask his client to stipulate to postpone hearing and trial dates that had already passed?

## F.  Prejudice

At great expense, and for almost four (4) years, Calderon has pursued a defense of this prosecution through his attorneys of record herein.  After the inordinately long four (4) year delay since his arrest and incarceration, Calderon can no longer persist in his effort.  His ability to continue to fund his legal defense has been thoroughly exhausted as he has depleted any and all avenues for additional funds.  He, and his family have thoroughly depleted their resources through the course of these proceedings.  His account with his attorneys is six months in arrears.  In addition, his attorneys have been forced to expend their own money to cover some of the expenses and costs associated with his defense, including costs of travel.  In short, Calderon can no longer proceed in this action with his chosen counsel, because the inordinate delay in the prosecution has exhausted his ability to do so, and placed him in a dire state of confusion, depression, hopelessness, and poverty.

/ / /

/ / /

/ / /

## III.  **CONCLUSION**

Calderon respectfully asks this Court to dismiss the matter now pending against him because the United States Supreme Court has instructed us to do so.  The Supreme Court clearly tells us:

> [A] defendant has no duty to bring himself to trial; the State has that duty as well as the duty of insuring that the trial is consistent with due process. Moreover, for the reasons earlier expressed, society has a particular interest in bringing swift prosecutions, and society's representatives are the ones who should protect that interest.

The prosecution has failed to prosecute this matter in a timely fashion against Mr. Calderon.

Respectfully submitted,

CONTRERAS & CAMPA,LLP

By:    Anthony Contreras. Esq.
Attorneys for Defendant
Roman Calderon